**DLD-104**                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3983
_____

NATHAN RILEY,
Appellant

v.

MICHAEL DECARLO, Correctional Food Service Manager 1;
WALLACE DITTSWORTH, Correctional Food Service Manager 2;
JEFF ROGERS, Correctional Classification Program Manager
LOUIS FOLINO, Superintendant; REV. ALEDA MENCHYK, Facility
Chaplaincy Program Director; NEDRO GREGO, RN Supervisor;
J NIEHENKE, Former Safety Manager; FNU CUMBERLEDGE, Safety Manager;
STEVE BLAZE, Facility Maintenance Manager 3; DORINA VARNER, Chief
Grievance Officer; JEFFREY A. BEARD, Former Secretary of Corrections
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:11-cv-00537)
District Judge:  Honorable Cathy Bissoon
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 31, 2013

Before: AMBRO, SMITH and CHAGARES, Circuit Judges

(Opinion filed, February 13, 2013)
_____

OPINION
_____

PER CURIAM

Nathan Riley, an inmate currently incarcerated at SCI Greene in Waynesburg, Pennsylvania and proceeding pro se, appeals from an order of the United States District Court for the Western District of Pennsylvania granting summary judgment to Appellees and dismissing one of his Eighth Amendment claims with prejudice. Because this appeal does not present a substantial question, we will summarily affirm the District Court's order. See 3d Cir. L.A.R 27.4; I.O.P. 10.6.

I.

Because we write primarily for the parties, we need only recite the facts necessary for our discussion. After being transferred to SCI Greene in May 2007, Riley was immediately placed into administrative custody because he faced danger from another inmate. He was kept in administrative custody until December 17, 2010. In his complaint, Riley alleges that during his stay in the restricted housing unit ("RHU"), he was served a diet containing approximately one-third of the calories provided to general population inmates and that he suffered substantial weight loss, constant hunger, weakness, and fatigue as a result. He also asserts that he was served meals on unsanitary and contaminated food service trays. Furthermore, Riley argues that the ventilation system in the RHU was not adequately maintained and that the resulting air quality caused him to suffer various physical ailments.

After exhausting his administrative remedies, Riley filed his civil rights complaint pursuant to 42 U.S.C. § 1983. After conducting discovery, Appellees filed a motion for summary judgment on February 24, 2012. On September 25, 2012, the District Court

2

granted summary judgment to Appellees and dismissed Riley's Eighth Amendment claim regarding the Department of Correction's ("DOC") tuberculosis test procedures with prejudice. Riley then timely filed this appeal.

II.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment and dismissing Riley's Eighth Amendment claim. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009); Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). We may summarily affirm on any basis supported by the record. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This Court affirms a district court's dismissal for failure to state a claim "only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint." McGovern v. City of Phila., 554 F.3d 114, 115 (3d Cir. 2009).

Furthermore, summary judgment is appropriate only when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the burden of

3

demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party." Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citing Anderson  v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

III.

Section 1983 provides private citizens with a means to redress violations of federal law committed by state individuals. See 42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff "must establish that she was deprived of a federal constitutional or statutory right by a state actor." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).

Riley first alleges that his Eighth Amendment rights were violated because of the conditions of confinement he endured in the RHU.  The relevant inquiry is whether the alleged deprivation is "sufficiently serious" and whether the inmate has been deprived of the "minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  An inmate must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials demonstrated "deliberate indifference" to his health or safety. Id.  However, only "extreme deprivations" are sufficient to sufficiently allege claims for conditions of confinement. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and

4

the repair and functioning of basic physical activities such as plumbing, ventilation and showers." Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (citing Tillery v. Owens, 907 F.2d 418, 427 (3d Cir. 1990)).

First, Riley asserts that Appellees violated his Eighth Amendment rights by serving him a diet containing one-third of the calories provided to general population inmates. However, Riley has provided no evidence to support this contention. Furthermore, although Riley weighed approximately 163 pounds during District Court proceedings and weighed 187 pounds five years earlier, this is insufficient to support his claim that he was subjected to a semi-starvation diet. Accordingly, the District Court properly granted summary judgment to Appellees.

Riley also asserts that Appellees failed to maintain the ventilation system in the RHU and subjected him to poor air quality that made him suffer various physical ailments. Here, the record reflects that officials cleaned the ducts and changed the filters; accordingly, officials were not indifferent to the conditions of the ventilation system.

Although Riley's medical records establish that he received treatment for allergies and congestion at various times, medical staff did not recommend that he be moved to another cell, and his lungs were characterized as "clear." Moreover, nothing in the record indicates that prison officials were aware of these maladies and deliberately continued to ignore maintenance of the ventilation system. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (noting that non-medical prison officials will not be charged with deliberate indifference absent a reason to believe or actual knowledge that medical staff

5

are mistreating a prisoner); see also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Riley also has not shown that the ventilation system in the RHU caused his ailments. Therefore, we agree with the District Court that summary judgment was warranted for Appellees as to this claim.

Riley also alleges that Appellees violated his Eighth Amendment rights by serving him meals on unsanitary and contaminated food service trays during his time in the RHU. However, this claim is barred by the doctrine of res judicata. This doctrine bars a plaintiff who has received a final judgment on the merits in one action from litigating another suit against the same parties based on the same cause of action. See CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3d Cir. 1999). A litigant is precluded from raising a claim where "there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." United States v. Athlone Indus. Inc., 746 F.2d 977, 983 (3d Cir. 1984). Whether two causes of action are identical generally depends on a consideration of (1) whether the acts complained of and the demand for recovery are the same; (2) whether the same witnesses and documents will be necessary in the trial in both cases; and (3) whether the material facts alleged are the same. See id. at 984.

Here, the District Court properly concluded that res judicata applied to Riley's claim regarding the trays. First, Riley received a final judgment on the merits when the Honorable Nora Barry Fischer dismissed with prejudice an identical claim in Blount v. Folino, No. 10-697, 2011 WL 2489894, at *1, *11-*13 (W.D. Pa. June 21, 2011). See

6

<u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 399 n.3 (1981) (a "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits" and has claim preclusive effect).  Second, Riley and Appellees DeCarlo and Dittsworth were parties to the suit in <u>Blount</u>.  Finally, <u>Blount</u> presented the same cause of action presented here: that DeCarlo and Dittsworth violated Riley's Eighth Amendment rights by using allegedly unsanitary and contaminated food service trays.  Furthermore, it is irrelevant that Riley filed the complaint that is the subject of this appeal before Judge Fischer dismissed his claim in <u>Blount</u>.  See Rest. 2d Judg. § 14 (1982) ("For purposes of res judicata, the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect.").  Accordingly, the District Court properly granted summary judgment to Appellees on this claim.

Finally, Riley asserts that Appellees violated his Eighth Amendment rights by confining him to "medical keeplock" in the RHU for refusing to submit to a purified protein derivative ("PPD") test for tuberculosis.  The PPD test requires a small portion of PPD to be placed under the patient's skin.  However, the record establishes that Riley has never been forced to undergo a PPD test against his will and that he was never sanctioned for his refusal because his confinement in the RHU was never based upon his refusal to submit to the PPD test.  Therefore, the District Court properly dismissed this claim.[1]

---

[1] The District Court did not provide Riley leave to amend this claim before dismissing it with prejudice.  We conclude that the District Court did not err in declining to allow

7

Riley further alleges that officials violated his rights under the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause by not providing a Halal meat diet for Muslims and because of the DOC procedures concerning the PPD test. "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation omitted). However, an inmate only "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). To determine whether a regulation infringing upon constitutional rights is reasonable, courts apply the four factors set forth in Turner v. Safley, 482 U.S. 78 (1987). These factors require courts to consider: (1) "whether the regulation bears a 'valid rational connection' to a legitimate and neutral government objective;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives." Id. at 89-90; see also Fraise v. Terhune, 283 F.3d 506, 513-14 (3d Cir. 2002) (citations omitted).

Riley an opportunity to amend because we do not see how any amendment to his complaint would save his claims. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002) (noting that court should not dismiss pro se complaints without granting leave to amend unless "amendment would be inequitable or futile").

8

With regard to Riley's Equal Protection claim, "Turner is equally applicable [], and the appropriate analysis for this claim is the same as that for [his] Free Exercise claim." DeHart v. Horn, 227 F.3d 47, 61 (3d Cir. 2000). Generally, prison officials cannot discriminate against inmates of different religions. Cruz v. Beto, 405 U.S. 319 (1972) (per curiam). However, an inmate "cannot obtain relief if the difference between the defendants' treatment of him and their treatment of [inmates of another religion] is 'reasonably related to legitimate penological interests.'" DeHart, 227 F.3d at 61.

According to Riley, prison officials have violated his First and Fourteenth Amendment rights by choosing not to provide a Halal meat diet to all Muslim inmates while providing a kosher diet for Jewish inmates. However, the record reflects that most Muslims incarcerated within the DOC eat the alternative protein diet or the no animal products diet to be in accord with their religious beliefs. Furthermore, the DOC does not provide a Halal meat diet because such a diet would significantly impact prison resources because of the cost of Halal meats. Additional staff would be needed to check the food deliveries for security purposes, and kosher meat would also need to be ordered for Jewish inmates to avoid equal protection problems. Accordingly, Appellees have demonstrated a legitimate government objective underlying its decision not to serve a Halal meat diet. See Turner, 482 at 89.

Furthermore, Appellees have submitted evidence that Riley has been provided numerous opportunities to request the no animal products diet but has refused to do so. Therefore, Riley has alternative ways of observing his religious beliefs. See id. at 90.

9

Likewise, Appellees have satisfied the third and fourth Turner factors by demonstrating the deleterious impact serving a Halal meat diet would have on other inmates, prison officials, and prison resources and by noting that an alternative—the no animal products diet—does already exist at de minimus cost. See id. Given the record, we agree with the District Court that summary judgment was warranted for Appellees on this claim.

Riley also asserts that the DOC's policy of administering a PPD test for tuberculosis violates his religious beliefs because the form of testing is forbidden under the tenets of Islam. However, as noted above, Riley was never forced to undergo a PPD test against his will, and he was never confined in the RHU for his failure to submit. Accordingly, Riley has not met his burden of demonstrating that the DOC's regulations concerning PPD testing interfered with the practice of his religion, and the District Court properly granted summary judgment to Appellees for this claim.

According to Riley, the DOC's regulations concerning religious diets and PPD testing also violated his rights under the RLUIPA. The RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). The statute states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1)    is in furtherance of a compelling governmental interest; and

10

(2)     is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

"[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs." Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007). If an inmate satisfies his initial burden of showing that a practice substantially burdens his religious exercise, the burden then shifts to the government to show that the challenged policy "is in furtherance of a compelling governmental interest and is the least restrictive means" to enforce that interest. Id. at 283 (citing 42 U.S.C. § 2000cc-1(a)). As discussed above, however, Riley has not demonstrated that the DOC's decision to not serve a Halal meat diet and its policies concerning PPD testing have substantially burdened his religious exercise. Therefore, the District Court properly granted summary judgment to Appellees for Riley's claims under the RLUIPA.

## IV.

For the foregoing reasons, no substantial question is presented and we will affirm the judgment of the District Court. See 3d Cir. L.A.R 27.4; I.O.P. 10.6.

11